UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KIRK AVERY,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA DRYWALL, CO., et al.,<br><br>    Defendants. | Case No. 5:15-cv-04426-RMW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

In this employment dispute, defendants California Drywall Co. and Steve Eckstrom move to dismiss plaintiff Kirk Avery's complaint for failure to exhaust administrative remedies and failure to state a claim. Dkt. No. 18. Alternatively, defendants move to compel arbitration. *Id.* For the reasons set forth below, the court GRANTS in part and DENIES in part defendants' motion.

**I.  BACKGROUND**

    **A.  Factual Background**

This dispute centers on the circumstances of plaintiff's employment with and subsequent termination from defendant California Drywall ("CDW"). According to the complaint, plaintiff was hired by CDW as the Working Superintendent for Fireproofing in San Jose, California and started working for CDW in February 2014. Dkt. No. 1 ("Compl.") ¶ 7. Plaintiff alleges that in January 2014, plaintiff and defendants entered into an oral agreement for employment. *Id.* ¶ 43.

Plaintiff's terms of employment allegedly included, among other things: continued membership in Plasterers' & Cement Masons' Local Union No. 300 ("Local 300"); hourly pay; minimum of 40 hours per week; and overtime pay. *Id.* ¶ 9. Plaintiff alleges that defendants initially paid plaintiff $35 per hour, a rate increased to $40 per hour in August 2014. *Id.* ¶ 11. As plaintiff is a member of Local 300, he argues that his employment is governed by the terms of Local 300's labor agreement with an organization called the Wall and Ceiling Alliance ("Labor Agreement"). *See id.* ¶¶ 18-20; Dkt. No. 1-1 (Compl. Ex. A).

The complaint alleges that six months after his employment began, around August 2014, plaintiff was approached by his Senior Project Manager and told to start training workers in a "Tapers union" to perform fireproof patching. *Id.* ¶ 16. Plaintiff hypothesizes that "this was to save costs and have unlicensed workers perform the duties of a licensed worker at a discounted rate." *Id.* ¶ 17. Plaintiff asserts that he refused and informed his senior project manager that the request would be in conflict with his union contract. *Id.* ¶ 18. According to the complaint, in September 2014, plaintiff was told by his senior project manager that CDW would no longer be paying his overtime compensation; instead all overtime pay would be reflected in his annual bonus. *Id.* ¶¶ 24-25. Plaintiff alleges that his direct supervisor told him that the amount would equate to approximately $20,000 in annual bonus and $5,000 in overtime pay. *Id.* ¶ 26.

On January 20, 2015, Plaintiff asserts that his senior project manager again told him to start training workers in the Tapers union to perform "Plasters work." *Id.* ¶ 28. Plaintiff told his senior project manager that the request was illegal and in conflict with the Labor Agreement. *Id.* ¶ 29. Further discussions with management followed. *See id.* ¶¶ 30-31.

On January 26, 2015, one week before his annual bonus was to come due, plaintiff was terminated[1] from his position without any explanation. *Id.* ¶ 32.

The Labor Agreement sets out a three-step grievance procedure for any employment

---

[1] In addition to his allegations regarding the circumstances of his termination, plaintiff alleges, among other things, that his paystubs were routinely mismanaged, that his overtime compensation was often miscalculated, and that he was denied meal and rest breaks. Compl. ¶¶ 13-14.

disputes. First, the process starts with a grievance. Dkt. No. 1-1 at 23, Art. 10, § 3. Second, if unresolved at the grievance stage, the dispute moves to a Joint Conference Board set up with two union and two employer representatives. *Id.* § 4-5. Third, if unresolved, the dispute then goes to binding arbitration with arbitrators chosen by the Joint Conference Board. *Id.* §§ 6-9.

After the termination of his employment, plaintiff filed a grievance with Local 300. Compl. ¶ 36. The union allegedly told plaintiff that it "would not be able to represent him in his grievance." *Id.* ¶ 37. An employee of CDW allegedly told plaintiff that defendant Eckstrom had used his position as the President of the Wall and Ceiling Alliance to "snuff out" plaintiff's case through Local 300. *Id.* ¶ 38. At the time of plaintiff's termination, Eckstrom was the owner of CDW and the President of the Wall and Ceiling Alliance. *Id.* at ¶ 39.

### B.     Procedural History

Plaintiff commenced this lawsuit in Santa Clara County Superior Court on August 24, 2015. Dkt. No. 1. Plaintiff's complaint asserts the following claims:

> (1) Breach of Contract (Overtime Pay);
> (2) Breach of Contract (Annual Bonus);
> (3) Fraud – Intentional Misrepresentation;
> (4) Fraud – Promise Without Intent to Perform;
> (5) Failure to Provide Meal Breaks – Cal. Labor Code § 226.7;
> (6) Failure to Provide Rest Breaks – Cal. Labor Code § 226.7;
> (7) Failure to Pay Wages Including Overtime – Cal. Labor Code § 1194;
> (8) Failure to Provide Accurate Wage Statements – Cal. Labor Code § 226;
> (9) Waiting Time Penalties – Cal. Labor Code § 203;
> (10) Unfair Business Practices - Cal. Bus. & Prof. Code § 17200 et seq.;
> (11) Violation of Public Policy – Labor Code § 90.5;
> (12) Retaliation in Violation of Public Policy – Cal. Labor Code § 923;
> (13) Negligent Infliction of Emotional Distress; and
> (14) Breach of Fiduciary Duty.

*Id.* Defendants removed the action to the U.S. District Court for the Northern District of California on September 26, 2015, asserting that this court has jurisdiction under 29 U.S.C. § 185 because the case is a civil action for violation of a contract between an employer and a labor organization.

Defendants initially moved to dismiss the complaint on October 30, 2015. Dkt. No. 9.

3
5:15-cv-04426-RMW
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
RS

Shortly thereafter, the case was reassigned to the undersigned judge. Accordingly, defendants refiled their motion to dismiss on December 17, 2015. Dkt. No. 18. Plaintiff filed an opposition on December 30, 2015, Dkt. No. 20, and defendants filed a reply on January 7, 2016, Dkt. No. 22. The court held a hearing on the instant motion on January 22, 2016.

## II.   ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

Defendants move to dismiss, or, alternatively, for a more definite statement, on several grounds addressed below.

### A.   Exhaustion of Administrative Remedies and Motion to Compel Arbitration

Defendants first argue that this case should be dismissed for failure to exhaust administrative remedies. Dkt. No. 18-1 at 3-5. "Generally, an employee seeking a remedy for a breach of a collective bargaining agreement must attempt to exhaust any grievance and arbitration procedures established by that agreement prior to bringing suit." *Herman v. United Bhd. of*

*Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1380 (9th Cir. 1995). "However, an employee need not do so if the employer repudiates those contractual procedures, or if the union breaches its duty of fair representation." *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 184–86 (1967)). In *Herman*, the Ninth Circuit held that if a plaintiff "can state facts sufficient to raise a genuine issue of material fact as to whether her union breached its duty of fair representation, then she may proceed to trial on her breach of contract action against her employer." *Id.* (reversing district court's grant of summary judgment for employer).

The court finds that plaintiff's allegations regarding compliance with the grievance process pass muster under Rule 12(b)(6). Defendants argue that because plaintiff filed suit without first attempting to present his dispute to a Joint Conference Board or arbitrator as contemplated in Article 10 of the Labor Agreement,[2] plaintiff is trying to circumvent the very collective bargaining agreement that forms the basis for some of his claims. Plaintiff responds that he attempted to comply with the grievance process, but after Local 300 refused to represent him, his claims "were never investigated or pursued." Dkt. No. 20 at 6 (citing Compl. ¶¶ 36-41). Plaintiff does not explicitly accuse his union of breaching its duty of fair representation. Indeed, the union might have had legitimate reasons for refusing to represent plaintiff. However, plaintiff does allege that defendant Eckstrom worked to "snuff out" plaintiff's case through Local 300. Compl. ¶ 38. Assuming, as the court must on a motion to dismiss, that this allegation is true, the court finds that plaintiff has made allegations—albeit vague allegations—suggesting that Local 300 breached its duty of fair representation, thus excusing plaintiff from exhausting the grievance process.

The parties also seem to dispute whether the grievance procedure in the Labor Agreement even applies to disputes between an employee not represented by a union and an employer. Plaintiff points to Article 10, Section 3 of the agreement, which states, in relevant part: "Whenever an alleged violation of this Agreement, or any dispute concerning the meaning, interpretation or enforcement of this Agreement, exists between the Union and any Employer and/or the

---

[2] *See* Dkt. No. 1-1 at 23.

Association, *the Union, the Association or an Employer may file a grievance*." Dkt. No. 1-1 at 23, Art. 10, § 3 (emphasis added). Plaintiff argues that this section of the agreement does not indicate a requirement for an individual employee, without the assistance of a union, to file a grievance. Plaintiff argues that a grievance procedure that does not provide a right for individual employees to file grievances is invalid under 5 U.S.C. § 7121(b)(1)(C)(ii). Dkt. No. 20 at 6. Thus, plaintiff argues, he was left without recourse and was forced to initiate this suit. *Id.* In reply, defendants argue that it is unreasonable "to assume that Local 300 would violate federal law and deny [plaintiff] an opportunity to bring his claim individually, without ever attempting to bring the claim." Dkt. No. 22 at 3. The court need not resolve this issue because the court finds, as explained above, that plaintiff has sufficiently alleged that the union breached its duty of fair representation.

Accordingly, defendants' motion to dismiss for failure to exhaust administrative remedies is DENIED.

For similar reasons, based on the pleadings, the court is unable to compel arbitration. The Labor Agreement indicates that the Joint Conference Board, which includes two union members, will participate in selection of an arbitrator. *See* Dkt. No. 1-1 at 24, Art. 10, §§ 4, 6-7. To the extent that the union, in refusing to "represent" plaintiff, refused to participate in convening a Joint Conference Board, the section of the Labor Agreement requiring arbitration may not apply. Accordingly, defendants' motion to compel arbitration is DENIED.

### B.     **Plausibility Standard Generally**

Defendants next argue that plaintiff has failed to plead with sufficient particularity to show that his claims are plausible under *Iqbal*. Dkt. No. 18-1 at 5-6. While the court agrees that certain sections of the complaint rely on conclusory statements and legal conclusions, this section of defendants' motion does not point to any specific examples of such statements. Only in their reply brief do defendants criticize particular statements as conclusory, depriving plaintiff of a chance to respond. The court finds that defendants have not presented a sufficient basis to dismiss plaintiff's complaint in its entirety, and the court instead addresses defendants' arguments against specific

claims.

### C.     Fraud (Claims 3 and 4)

Defendants argue that plaintiff has not met the heightened pleading standard to plead fraud under Federal Rule of Civil Procedure 9(b).[3] Dkt. No. 18-1 at 6-8. The Ninth Circuit has held that "where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Id.* at 765 (citation omitted).

Plaintiff points to the following allegations in the complaint to show that he has satisfied these requirements:

> 1. After refusing to violate the union contract, on or about September 2014, plaintiff was told by SPM[4] that CDW would no longer be paying for any more of his overtime compensation. Compl. ¶ 24
> 2. He was further told by his direct Supervisor that the amount [of his bonus in lieu of overtime] would equate to about $20,000 to $25,000. *Id.* ¶ 26.
> 3. This change in plaintiff's overtime compensation directly conflicted with the terms of his employment and was done in retaliation for his refusal to violate the terms of his union. *Id.* ¶ 27.
> 4. Defendants . . . used the ruse of the annual bonus for their justification of discontinuing plaintiff's overtime and double-time compensation. *Id.* ¶ 58.
> 5. Defendants . . . knew [these statements] were false. *Id.* ¶ 59.
> 6. Defendants made [these statements] without any intention of performing. *Id.* ¶ 68.

*See* Dkt. No. 20 at 9. The court also notes that plaintiff has alleged that defendant Eckstrom, the owner of CDW, responded to plaintiff's refusal to train Tapers union workers by saying "[t]hat is a big problem." Compl. ¶ 30.

---

[3] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).
[4] Senior Project Manager.

Defendants initially argue that plaintiff fails to identify each individual defendant's role in the alleged fraud. Dkt. No. 18-1 at 7. The court finds defendants' argument unpersuasive because "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Swartz*, 476 F.3d at 764. The complaint alleges that false statements were made by CDW employees, and it is plausible to infer from his alleged statement that Eckstrom, CDW's owner, played a role in plaintiff's termination. These allegations are sufficient to put each defendant on notice.

Defendants also argue that while plaintiff alleges that he "acted in justifiable reliance upon the truth of the representations," Compl. ¶ 68, the complaint fails to identify what plaintiff did in reliance on the alleged misrepresentations. It is true that the sections of plaintiff's complaint regarding fraud do not recite specific actions that plaintiff took in reliance on defendants' statements. On the other hand, paragraph 35 of the complaint indicates that "[w]hen PLAINTIFF was terminated, overtime and double-time payments were still due to him." Given that plaintiff's fraud claims are based on alleged statements that plaintiff would receive an end-of-year payment for his overtime, it is plausible to infer that he relied on those statements by continuing to work overtime.

In sum, the court finds that the complaint contains sufficient allegations to adequately state a claim for fraud and that no more definite statement is required at the pleading stage.

### D.   Retaliation in Violation of Public Policy (Claim 12)

Defendants next assert that the complaint fails to state a claim for retaliation in violation of public policy under California Labor Code Section 923. Dkt. No. 18-1 at 9-10. That statute provides, in relevant part, that it is the policy of California that:

> [I]t is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other

mutual aid or protection.

Cal. Labor Code § 923. Defendant argues that there are no facts alleged that show that plaintiff was terminated because of his involvement in proper union activities. Dkt. No. 18-1 at 10. Plaintiff responds by arguing that his allegations, taken as a whole, support the reasonable inference that he was terminated for refusing to "violate the terms of his union." Dkt. No. 20 at 11.

While the fact that plaintiff has not described which "terms of his union" plaintiff would have violated by training other workers troubles the court, that lack of specificity is not the basis of defendants' argument. Rather, defendants argue that "Plaintiff's allegation that his refusal to perform work was a refusal to violate the rules of his union is not a fact that the Court must accept as true, but is a bare legal conclusion" that the court should disregard. Dkt. No. 22 at 10. Defendants provide no analysis in support of their position. The court finds that it is at least plausible to infer that plaintiff believed he would be violating Local 300's policies by training workers from outside his union and that he was terminated for his refusal to conduct such training.

While the court declines to dismiss claim 12, the court finds that the pleading is so vague and ambiguous that it would be difficult for defendants to prepare a response. *See* Fed. R. Civ. P. 12(e). Accordingly, defendants' motion in the alternative for a more definite statement is GRANTED. Plaintiff shall amend the allegations of claim 12 to describe which union rules plaintiff believed he would be violating by training other workers. Plaintiff shall also describe which portions of Labor Code § 923 were allegedly violated by defendants.

### E.     Fiduciary Duty (Claim 14)

Eckstrom argues that plaintiff has failed to state a claim for breach of fiduciary duty. Dkt. No. 18-1 at 12-13. "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008).

Plaintiff's complaint contains only a vague allegation that Eckstrom "owes fiduciary duties of care, loyalty, and good faith to agents of CDW," Compl. ¶ 125, without specifying who these

agents are or providing any basis on which to conclude that Eckstrom knowingly undertook a duty to them. Accordingly, if Eckstrom has any fiduciary obligations, these obligations must be derived from his relationships with others.

Defendant argues that while Eckstrom, as CDW's owner, may owe a fiduciary duty to any minority shareholders or to the corporation itself, Eckstrom does not owe any such duty to employees such as plaintiff. Plaintiff responds by arguing that the officers of "labor organizations" owe a fiduciary duty to their members. Dkt. No. 20 at 12. Plaintiff's argument misses the mark, however. In his role at CDW, Eckstrom acts as an employer, not an officer of any labor organization. Plaintiff cites no authority indicating that the owner of a company necessarily owes a fiduciary duty to employees.

Because plaintiff has failed to plead the existence of any fiduciary duty, Claim 14 must be dismissed. While the court is concerned that an amendment might not cure this deficiency, the court will nevertheless grant leave to amend.

### F. Violation of Public Policy and Negligent Infliction of Emotional Distress (Claims 11 and 13)

Defendants move to dismiss plaintiff's eleventh claim for violation of public policy, Dkt. No. 18-1 at 8-9, and plaintiff's thirteenth claim for negligent infliction of emotional distress, *id.* at 10-12. In response, plaintiff agrees to amend his complaint to remove these claims. Dkt. No. 20 at 14. Accordingly, the court grants defendants' unopposed motion to dismiss these claims.

### G. Punitive Damages

Defendants argue that punitive damages are not allowed for the claims alleged by plaintiff, which are based on a breach of the Labor Agreement. Dkt. No. 18-1 at 13. Plaintiff responds that punitive damages are available when the breach is accompanied by a traditional common law tort, such as fraud or conversion. Dkt. No. 20 at 12. Indeed, defendants acknowledge that plaintiff's "tort claims may support an award for punitive damages," but defendants argue that any such tort claims "have not been pled in sufficient detail to support a claim." Dkt. No. 18-1 at 13. As discussed above, the court has found that plaintiff's complaint adequately states a claim for fraud.

10
5:15-cv-04426-RMW
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
RS

1  Accordingly, defendant's motion to dismiss plaintiff's claims for punitive damages is DENIED.

## III. ORDER

For the foregoing reasons, defendants' motion is GRANTED in part and DENIED in part as follows:

- Claim 11 for violation of public policy is dismissed without prejudice.
- Claim 12 for retaliation in violation of public policy is not dismissed, but defendants' motion for a more definite statement is granted.
- Claim 13 for negligent infliction of emotional distress is dismissed without prejudice.
- Claim 14 for breach of fiduciary duty is dismissed without prejudice.
- Defendants' motion to dismiss is DENIED in all other respects.

Plaintiff shall file an amended complaint consistent with this order within **14 days**.

**IT IS SO ORDERED.**

Dated: March 15, 2016

_____
Ronald M. Whyte
United States District Judge